# Exhibit A

 **Wolters Kluwer**

**CT Corporation**
**Service of Process Notification**
06/24/2026
CT Log Number 552593971

## Service of Process Transmittal Summary

**TO:**    Kareem Amin
Clay Labs Inc.
119 N 11TH ST APT 3C
BROOKLYN, NY 11249-1165

**RE:**    **Process Served in Delaware**

**FOR:**    Clay Labs Inc.  (Domestic State: DE)
According to our records representation services for this entity have been discontinued in this jurisdiction.

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | ANNA BURZAWA, JOANN DAVIS, SRUTI BHAUMIK, BRIAN HEINZ, MAXX MILLS, AMARA PHILEBAUM, TYREE CALDWELL, JAMES HURD, and REX WAER individually and as representatives of classes of similarly-situated persons vs. CLAY LABS INC. |
| **CASE #:** | 2026LA00832 |
| **PROCESS SERVED ON:** | The Corporation Trust Company, Wilmington, DE |
| **DATE/METHOD OF SERVICE:** | By Process Server on 06/24/2026 at 11:51 |
| **JURISDICTION SERVED:** | Delaware |
| **ACTION ITEMS:** | CT will retain the current log |
| | Image SOP |
| | Email Notification,  Kareem Amin  kareem@clay.run |
| **REGISTERED AGENT CONTACT:** | The Corporation Trust Company 1209 Orange Street Wilmington, DE 19801 877-467-3525 SmallBusinessTeam@wolterskluwer.com |

The information contained in this Transmittal is provided by CT for quick reference only. It does not constitute a legal opinion, and should not otherwise be relied on, as to the nature of action, the amount of damages, the answer date, or any other information contained in the included documents. The recipient(s) of this form is responsible for reviewing and interpreting the included documents and taking appropriate action, including consulting with its legal and other advisors as necessary. CT disclaims all liability for the information contained in this form, including for any omissions or inaccuracies that may be contained therein.

# PROCESS SERVER DELIVERY DETAILS

**Date:** Wed, Jun 24, 2026

**Server Name:** Wilmington Drop Serve

| Entity Served | CLAY LABS INC. |
|---|---|
| Case Number | 2026LA00832 |
| Jurisdiction | DE |

| Inserts |
|---|
| |



SUMMONS - CIRCUIT COURT    SCR 101(d)                                3101 (Rev. 1/26)

# IN THE CIRCUIT COURT OF THE EIGHTEENTH JUDICIAL CIRCUIT
## DUPAGE COUNTY, ILLINOIS

Anna Burzawa, et al.

**PLAINTIFF**

vs

Clay Labs Inc.

**DEFENDANT**

2026LA00832

**CASE NUMBER**

# SUMMONS
## CIRCUIT COURT

[X] ORIGINAL   [ ] ALIAS

File Stamp Here

To each defendant: Clay Labs Inc. c/o The Corporation Trust Company 1209 Orange St. Wilmington, DE 19801

You are summoned and required to file an answer to the complaint in this case, a copy of which is hereto attached, or otherwise file your appearance in the office of the Clerk of the Circuit Court, 505 N. County Farm Road, Wheaton, Illinois, within 30 days after service of this summons not counting the day of service. If you fail to do so, a judgment by default may be entered against you for the relief asked in the complaint.

You are a party to a civil matter. Read all documents attached to this Summons. Typically, this means you must file an official document with the court, within the time stated on this Summons, called an "Appearance" and a document called an "Answer/Response". Note the Answer/Response is not required for small claims and eviction cases unless ordered by the court. If these documents are not filed on time the court may decide the case without hearing from you, and you could be held in default and lose the case.

Documents must be filed electronically with the court (e-filed), which requires an account be created with an Illinois e-filing service provider, see ilcourts.info/efiling. If you are unable to e-file, you can obtain an exemption that allows filing in-person or by mail.

You may be charged filing fees. If you are unable to pay them, you can file an Application for Waiver of Court Fees. A judge will rule on your eligibility for a fee waiver.

The court may allow you to attend the first court date in this case by videoconference. Visit dupagecircuitclerk.gov to find the Zoom link for this case on your court date. Contact the Circuit Court Clerk's office at (630)407-8700 for more information.

Need more help? Visit ilcourthelp.gov or call/text Illinois Court Help at (833)411-1121 for information about going to court, including how to fill out legal documents. Also, free legal information and referrals are available at illinoislegalaid.org. Document forms referred to in this Summons can be found at dupagecircuitclerk.gov or ilcourts.info/forms.

¿Necesita ayuda? Llame o envíe un mensaje de texto a Illinois Court Help al (833)411-1121, o visite ilcourthelp.gov para obtener información sobre los casos de la corte y cómo completar y presentar formularios.

### To the Officer

This summons must be returned by the officer or other person to whom it was given for service, with endorsement of service and fees, if any, immediately after service and not less than three (3) days before the date of remote appearance. If service cannot be made, this summons shall be returned so endorsed. This summons may not be served later than thirty (30) days after its date.

Date of Service: _____

To be inserted by officer on copy left with Defendant or other person.

Name Anderson + Wanca    [ ] Pro Se

DuPage Attorney Number: 11575

Attorney for: Plaintiffs

Address: 3701 Algonquin Road, Suite 500

City/State/Zip: Rolling Meadows, IL 60008

Telephone Number: 847-368-1500

Email: buslit@andersonwanca.com

WITNESS: **CANDICE ADAMS,** Clerk of the Eighteenth Judicial Circuit Court, and the seal thereof, at Wheaton, Illinois. 6/22/2026 8:14 AM SF

DATED

of the Eighteenth Judicial Circuit

**CANDICE ADAMS, CLERK OF THE 18TH JUDICIAL CIRCUIT COURT**
**WHEATON, ILLINOIS**

(Rev 1/26)

## SUMMONS RETURN
I certify that I served this summons on defendant as follows:

☐ (a)   Individual - personal:
By leaving a copy and a copy of the complaint with each individual personally.

☐ (b)   Individual - abode:
By leaving a copy and a copy of the complaint at the usual place of abode of each individual with a person of the family, of the age of 13 years or upwards, informing that person of the contents of the summons, and also by sending a copy of the summons and the complaint in a sealed envelope with postage fully prepaid, addressed to each individual at the usual place of abode.

☐ (c)   Corporate:
By leaving a copy and a copy of the complaint with the registered agent, officer, or agent of each corporation.

☐ (d)   Other Service: _____

☐ (e)   Unable to Serve:_____

Name of Defendant _____     Name of Defendant _____

Name of Person
Summons Given to _____     Name of Person
Summons Given to _____

Sex_____ Race _____ Approx. Age_____     Sex _____ Race _____ Approx. Age _____

Place of Service_____     Place of Service_____

City/State _____     City/State _____

Date of Service_____ Time _____     Date of Service _____ Time _____

Special Process Server of _____

By_____ Illinois License Number _____

Sheriff of_____ County

By _____ Deputy Badge Number _____

Sheriff's Fees

Service and Return ........................................................$ _____

Miles _____ ...............................................$ _____

**Total** ........................................................$ _____

**IN CIRCUIT COURT FOR THE EIGHTEENTH JUDICIAL CIRCUIT
DUPAGE COUNTY, ILLINOIS**

Candice Adams
e-filed in the 18th Judicial Circuit Court
DuPage County
ENVELOPE: 38636066
2026LA000832
FILEDATE: 6/18/2026 3:47 PM
Date Submitted: 6/18/2026 3:47 PM
Date Accepted: 6/22/2026 7:16 AM
KB

| | |
|---|---|
| ANNA BURZAWA, JOANN DAVIS, SRUTI BHAUMIK, BRIAN HEINZ, MAXX MILLS, AMARA PHILEBAUM, TYREE CALDWELL, JAMES HURD, and REX WAER individually and as representatives of classes of similarly-situated persons, <br><br> Plaintiffs, <br><br> v. <br><br> CLAY LABS INC., a Delaware corporation, <br><br> Defendant. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) <br><br> Case No.: **2026LA000832** |

**CLASS ACTION COMPLAINT**

Plaintiffs, Anna Burzawa ("Burzawa"), Joann Davis ("Davis"), Sruti Bhaumik ("Bhaumik"), Brian Heinz ("Heinz"), Maxx Mills ("Mills"), Amara Philebaum ("Philebaum"), Tyree Caldwell ("Caldwell"), James Hurd ("Hurd"), and Rex Waer ("Waer") (collectively "Plaintiffs"), on behalf of themselves and all other persons similarly situated, allege the following against Defendant Clay Labs, Inc. ( "Clay Labs" or "Defendant").

**NATURE OF ACTION**

1. Plaintiffs and members of the proposed classes (the "Classes" or "Class Members") seek statutory damages, an injunction, and other relief from Clay Labs for violations of their right of publicity as protected by statutes in the following states: Illinois, California, Indiana, and Alabama.

2. As discussed in detail below, Illinois, California, Indiana, and Alabama prohibit the use of an individual's name and other personal identifying information for commercial purposes without first obtaining consent, written or otherwise. *See* Illinois Right of Publicity Act

("IRPA"), 765 ILCS § 1075/1 *et seq.*; California Civil Code § 3344, *et seq.*; Indiana Publicity Code, IC 32-36-1 *et seq.*; and Alabama Right of Publicity Act ("ARPA") Ala. Code § 6-5-770 *et seq.*

3.      Clay Labs is a New York-based technology company incorporated in Delaware that operates an AI-powered go-to market data and workflow automation platform. The platform aggregates personal and professional information on individuals—including first and last name, work email, personal email, employer name, company location, phone number, and job title— giving sales and marketing professionals the tools to research prospects, build target contact lists, and launch personalized outreach campaigns at scale.[1]

4.      Users of Clay Labs' platform can search for and obtain personal information about individuals contained in Clay Labs' proprietary database, which Clay Labs augments with third-party sources.[2]

5.      Clay Labs offers a limited version of its platform for free. Clay Labs also offers more expansive versions for a subscription price. For all versions, Clay Labs provides prospective subscribers with a 14-day free trial.

6.      Clay Labs uses its 14-day free trial to incentivize unsubscribed users to upgrade to a paid subscription. During the free trial, users gain access to the Clay Labs web application and can search for individuals using filters including name, company, job title, and location. The platform surfaces a list of named individuals matching those filters, displaying each person's first name, last name, employer, company location, and work email address. Trial users can also run

---

[1] Information from Clay Labs website, www.clay.com, last visited on June 11, 2026.

[2] According to its own website, Clay Labs "maintains proprietary databases containing data it has acquired from third parties." *See* https://trust.clay.com/faq, last visited on June 11, 2026.

2

additional enrichment to surface further personal information about each named individual, including personal email addresses.

7. Clay Labs employs two distinct mechanisms by which individuals' identities are used for commercial purposes to induce trial users to convert to paying subscribers. First, when a trial user searches for individuals, Clay Labs displays the existence of a larger list of results but restricts access to a limited subset—for example, showing only 50 of 1,000 matching individuals—and prompts the user to upgrade to a paid subscription to access the remainder. Second, Clay Labs categorically withholds certain data—including cell phone numbers, gender, and home address—regardless of a user's credit balance during the trial and advertises those attributes as accessible only upon upgrading to a paid plan.

8. Plaintiffs and the Classes have no relationship with Clay Labs and have never subscribed to or used Clay Labs' platform. More importantly, Plaintiffs and the Classes never provided Clay Labs with consent to use their identities to advertise premium subscriptions to Clay Labs' platform. Despite failing to obtain consent from Plaintiffs and the Classes, Clay Labs nevertheless utilized their personal identifying information for the purpose of enticing users to enter into paid premium subscriptions for additional access to personal data contained in the platform.

9. In other words, Clay Labs used Plaintiffs' and other Class Members' identities for commercial purposes without their consent in violation of multiple state Right of Publicity statutes, which prohibit the use of an individual's identity for commercial purposes without prior consent, written or otherwise. *See* IRPA, 765 ILCS § 1075/1 *et seq.*; California Civil Code § 3344, *et seq.*; Indiana Publicity Code, IC 32-36-1 *et seq.*; and ARPA, Ala. Code § 6-5-770 *et seq.*

10. Plaintiffs bring this Complaint seeking an order (i) declaring that Clay Labs' conduct violates the aforementioned state statutes, (ii) requiring that Clay Labs cease the unlawful

3

activities described herein and enjoining Clay Labs from committing such unlawful activities in the future, (iii) awarding Plaintiffs and the Classes statutory damages in amounts prescribed by the respective statutes per violation or an amount equal to actual damages/profits, whichever is greater, and (iv) an award for punitive damages, if warranted, and attorneys' fees and costs where permitted by law.

## PARTIES

11.     Plaintiff Anna Burzawa is a citizen and resident of the State of Illinois.

12.     Plaintiff Joann Davis is a citizen and resident of the State of Illinois.

13.     Plaintiff Sruti Bhaumik is a citizen and resident of the State of California.

14.     Plaintiff Brian Heinz is a citizen and resident of the State of California.

15.     Plaintiff Maxx Mills is a citizen and resident of the State of Indiana.

16.     Plaintiff Amara Philebaum is a citizen and resident of the State of Indiana.

17.     Plaintiff Tyree Caldwell is a citizen and resident of the State of Alabama.

18.     Plaintiff James Hurd is a citizen and resident of the State of Alabama.

19.     Plaintiff Rex Waer is a citizen and resident of the State of Alabama.

20.     Defendant Clay Labs, Inc. is a Delaware corporation with its principal place of business in New York. Through its proprietary platform, Clay Labs seeks out and compiles identifying information of Illinois, California, Indiana, and Alabama citizens and uses that information to market its online platform to Illinois, California, Indiana, and Alabama, citizens and others without consent.

## JURISDICTION AND VENUE

21.     Jurisdiction is conferred by 735 ILCS § 5/2-209 in that Clay Labs, during the relevant period, sought out and compiled identifying information of Illinois citizens, and used that

4

information for marketing without written consent. In so doing, Clay Labs committed the statutory violations related to the matters complained of herein in Illinois. This Court is a court of general jurisdiction and, as such, has jurisdiction to adjudicate all justiciable matters between the parties.

22. Venue is proper in Cook County pursuant to 735 ILCS § 5/2-101, *et seq.* in that Clay Labs is an out-of-state entity that committed statutory violations towards citizens of Illinois residing, among other places, in DuPage County. Defendants sought out and compiled the names and other identifying information of Plaintiffs Burzawa, Davis and other Illinois citizens and used that information for marketing to Illinois citizens and others without written consent. In so doing, some of Defendants' statutory violations related to the matters complained of herein occurred in Illinois.

## ILLINOIS RIGHT OF PUBLICITY ACT

23. IRPA was enacted in 1999 to recognize individuals' "right to control and to choose whether and how to use [their] individual identity for commercial purposes." 765 ILCS § 1075/10.

24. IRPA defines "identity" as "any attribute of an individual that serves to identify that individual to an ordinary, reasonable viewer or listener, including but not limited to (i) name, (ii) signature, (iii) photograph, (iv) image, (v) likeness, or (vi) voice." 765 ILCS § 1075/5. "Commercial purpose" is defined in part, as "the public use or holding out of an individual's identity (i) on or in connection with the offering for sale or sale of a product, merchandise, goods, or services; (ii) for purposes of advertising or promoting products, merchandise, goods, or services; or (iii) for the purpose of fundraising." *Id.*

25. IRPA prohibits the use of an individual's identity for commercial purposes without first obtaining prior written consent. 765 ILCS § 1075/30. IRPA provides that a violation of the Act may result in statutory damages in the amount of $1,000 per violation or actual damages and profits derived from the unauthorized use, whichever is greater. 765 ILCS § 1075/40. IRPA further

provides that punitive damages may be rewarded for willful violations and authorizes the issuance of injunctive relief where appropriate. 765 ILCS § 1075/40 & 50.

## CALIFORNIA CIVIL CODE § 3344

26. Pursuant to California Civil Code § 3344, the use of another's name, voice, signature, photograph, or likeness, in any manner, on or in products, merchandise, or goods, or for purposes of advertising or selling, or soliciting purchases of, products, merchandise, goods or services, without such person's prior consent is prohibited.

27. Section 3344 provides for damages for a violation in an amount equal to the greater of $750 or the actual damages suffered as a result of the unauthorized use. Punitive damages may also be awarded, as well as attorneys' fees and costs.

## INDIANA CODE § 32-36-1 *et seq.*

28. Under Indiana's Publicity Code, an individual's name, voice, signature, photograph, image, likeness, distinctive appearance, gesture, or mannerism (*i.e.* "identity") is afforded protection from unauthorized commercial use provided the individual's identity has commercial value.[3] IC 32-36-1-6, 32-36-1-8. In other words, Indiana's Publicity Code protects an individual's right of publicity.

29. Section 32-36-1-8 of the Publicity Code prohibits the use of an individual's personality for a commercial purpose within Indiana without first obtaining prior written permission.

30. Section 32-36-1-10 of the Publicity Code provides for $1,000 or actual damages, whichever is greater, for violations of the Code and treble or punitive damages if the violation is

---

[3] The Code defines and refers to such "identity" as "personality". *See* IC 32-36-1-6.

6

"knowing, willful, or intentional." The Indiana statute further provides for injunctive relief. IC § 32-36-1-12.

## ALABAMA RIGHT OF PUBLICITY ACT

31.     ARPA protects "those attributes of a person that serve to identify that person to an ordinary viewer or listener, including, but not limited to name, signature, [or] .... likeness." AL ST § 6-5-772.

32.     ARPA prohibits the use of an individual's identity "for purposes of advertising or selling, or soliciting purchases of, products, goods, merchandise, or services .... without consent." AL ST § 6-5-772.

33.     Any person who establishes a violation of ARPA shall be eligible to receive: (i) statutory damages of $5,000 per action or compensatory damages including the Defendant's profits, (ii) any other damages available under Alabama law, including punitive damages and (iii) injunctive relief. AL ST § 6-5-774. Liability attaches whether the use is for profit or not. AL ST § 6-5-772.

## FACTUAL ALLEGATIONS

34.     Clay Labs is a technology company founded in 2017 that operates an AI powered go-to-market data and workflow automation platform serving over 500,000 go-to-market teams.

35.     Clay Labs is registered as a data broker in California, Nevada, Oregon, Texas, and Vermont, reflecting the commercial nature of its data-related activities.[4] Through these registrations, Clay Labs acknowledges that it gathers personal information about consumers with whom it has no direct relationship and engages in the sale or licensing of such information for commercial purposes.

---

[4] *See,* https://trust.clay.com/faq, last visited on June 11, 2026.

7

36. Clay Labs' platform provides sales and marketing professionals access to its proprietary database and tools to automate prospect research, enrich contact and firmographic data, and build personalized outreach workflows.

37. Clay Labs' platform is available to visitors of its website and citizens residing in all states, including those residing in Illinois, California, Indiana, and Alabama. Based on the size and scope of Clay Labs' database and platform, Plaintiffs contend that visitors to Clay Labs' webpage have used its platform and accessed its database in each of those states, among other states.

38. Clay Labs' platform allows users to search for individuals in its database and obtain access to their personal information through its web application. Users can search and filter for individuals by name, company, job title, location and other criteria.

39. The personal information accessible through Clay's platform includes individuals' full names, job titles, employer names, company locations, work email addresses, and personal email addresses. This information collectively serves to identify specific individuals to ordinary, reasonable viewers. Upon upgrading to a paid subscription, users can additionally access cell phone numbers, home addresses, and gender.

40. Clay Labs provides new users with four separate options to access its platform—a very-limited free version and three other, paid-subscription versions--each offering varying amount of functionality and data access based on the subscription price.

41. For each version of platform access, Clay Labs offers new users a 14-day free trial. With the free trial, users are provided with 1,000 data credits, which allows access to available features on the platform, including webhooks, CRM integrations, email sequencers, and HTTP API capabilities. However, phone number enrichments aren't available during the trial period. To access that feature, users must upgrade to a paid plan.

8

42.     When users sign up for the free trial, they can search for individuals using various filters including name, company, job title, and location. The platform then surfaces a list of named individuals matching those filters, displaying for each person their first name, last name, employer, company location, and work email address. Each search and enrichment action consumes a portion of the user's 1,000 trial credits, which are depleted as the user explores the platform.

43.     Trial users can run additional enrichments on the listed individuals to surface further personal information, including personal email addresses and cellular telephone numbers, without the individuals' knowledge or consent.

44.     As shown in the images below, when trial users exhaust their credits or attempt to access additional individuals beyond the permitted subset, Clay displays prompts encouraging them to upgrade to paid subscriptions to continue accessing personal information:



45.     The purpose behind Clay Labs providing users with a free trial and the ability to access a limited number of individuals' records is to advertise and convince prospective customers to purchase subscriptions to paid plans, where users can access exponentially more personal

information for as long as the monthly subscriptions are paid. By allowing prospective customers to sample real individuals' personal information through the free trial, Clay Labs uses Plaintiffs' and Class Members' identities as marketing tools to demonstrate the value of its paid subscriptions. This "try-before-you-buy" model transforms Plaintiffs' and Class Members' identities into advertising content for Clay Labs' commercial benefit, effectively making them unwilling spokespersons for Clay Labs' subscription services without their knowledge, consent, or compensation.

46. Individuals whose information appears on Clay Labs platform, including Plaintiffs and Class Members, have no relationship with Clay Labs and do not subscribe to or use its services. They have not provided Clay Labs consent to use their identifying information to market Clay Labs' subscription services.

47. Much of the information accessible on Clay Labs' platform is stored in an electronic database owned and maintained by Clay Labs. The inclusion of this information in its database demonstrates that Clay Labs knowingly collected, used, and/or held out this information, including identifying information of Plaintiffs, to users of the platform. Indeed, as a data broker, Clay Labs, by necessity, knows that it is collecting and utilizing Plaintiffs' information in its database for commercial purposes.

48. Plaintiffs and Class Members have intellectual property and privacy interests in their names, likenesses, and identities recognized by law. Plaintiffs and Class Members have the right to exclude anyone from using their identities for commercial purposes without their written permission.

49. Clay Labs has injured Plaintiffs and Class Members by using their identities for its own commercial purposes without compensation or permission.

50. Clay Labs' illegal actions caused Plaintiffs distress by using their identities to promote a product that they have no interest in promoting. Plaintiffs are further distressed by the fact that Clay Labs' use of their identities in this manner encourages and enables harassing and uninvited marketing and sales communications with them.

## FACTUAL ALLEGATIONS RELATING TO PLAINTIFFS

### Facts relating to Plaintiff Anna Burzawa (Illinois)

51. As of May 2026, the identity of Anna Burzawa was contained in Clay Labs' proprietary database and accessible through Clay Labs' platform. The profile of Burzawa contained in Clay Labs' database includes her name, employer, employer's location, and other personal information. This information is accessible through Clay Labs' search function and sufficient to identify Burzawa.

52. Potential customers availing themselves of Clay Labs' free trial can view information about Burzawa by using their free account. In other words, Burzawa's identity has been held out by Clay Labs for a commercial purpose, namely, to advertise monthly subscriptions to its platform

53. Clay Labs allows access to Burzawa's personal information contained on its platform to have potential customers familiarize themselves with the platform in the hope that those customers are incentivized to enter into paid subscriptions for continued access to the platform. Thus, Burzawa's identity has been knowingly and deliberately used by Clay Labs to market paid subscriptions to its platform.

54. Burzawa has no relationship with Clay Labs and does not utilize or subscribe to its platform.

55. Burzawa did not give consent, written or otherwise, to Clay Labs to use her name, likeness, personal information, or identity for its platform, or for any other reason. Nor did

11

Burzawa provide Clay Labs with written consent to use her identity for commercial purposes, as required by Illinois law. Had Clay Labs requested her consent, Burzawa would not have provided it.

56.     Clay Labs' knowing and deliberate use of Burzawa's identity to advertise subscriptions to its platform is misleading in that it gives the false impression that Burzawa is a willing participant in the platform, which she is not, and that she wants to receive unsolicited communications from sales professionals, marketers, and business development representatives, which she does not.

57.     Burzawa has intellectual property interest in her name, likeness, and identity recognized by Illinois law. Burzawa has the right to exclude anyone from using her identity for commercial purposes without her consent.

58.     Clay Labs has injured Burzawa by knowingly and deliberately using her identity for its own commercial purposes without compensation or written permission in violation of Illinois's Right of Publicity statute.

59.     The use of Burzawa's identity to advertise subscriptions to Clay Labs' platform demonstrates that her identity has value, to wit, its inclusion in the platform. Clay Labs' business model is dependent on Burzawa's identity, and others like it. Clay Labs derives value through the accumulation of individual identities for its platform by (i) charging subscribers a monthly or yearly fee for access to those identities, and (ii) using the same identities for marketing purposes.

### Facts relating to Plaintiff Joann Davis (Illinois)

60.     As of June 2026, the identity of Joann Davis was contained in Clay Labs' proprietary database and accessible through Clay Labs' platform. The profile of Davis contained in Clay Labs' database includes her name, employer, employer's location, and other personal

information. This information is accessible through Clay Labs' search function and sufficient to identify Davis.

61. Potential customers availing themselves of Clay Labs' free trial can view information about Davis by using their free account. In other words, Davis's identity has been held out by Clay Labs for a commercial purpose, namely, to advertise monthly subscriptions to its platform.

62. Clay Labs allows access to Davis's personal information contained on its platform to have potential customers familiarize themselves with the platform in the hope that those customers are incentivized to enter into paid subscriptions for continued access to the platform. Thus, Davis's identity has been knowingly and deliberately used by Clay Labs to market paid subscriptions to its platform.

63. Davis has no relationship with Clay Labs and does not utilize or subscribe to its platform.

64. Davis did not give consent, written or otherwise, to Clay Labs to use her name, likeness, personal information, or identity for its platform, or for any other reason. Nor did Davis provide Clay Labs with written consent to use her identity for commercial purposes, as required by Illinois law. Had Clay Labs requested her consent, Davis would not have provided it.

65. Clay Labs' knowing and deliberate use of Davis's identity to advertise subscriptions to its platform is misleading in that it gives the false impression that Davis is a willing participant in the platform, which she is not, and that she wants to receive unsolicited communications from sales professionals, marketers, and business development representatives, which she does not.

66. Davis has intellectual property interest in her name, likeness, and identity recognized by Illinois law. Davis has the right to exclude anyone from using her identity for

13

commercial purposes without her consent.

67.     Clay Labs has injured Davis by knowingly and deliberately using her identity for its own commercial purposes without compensation or written permission in violation of Illinois's Right of Publicity statute.

68.     The use of Davis's identity to advertise subscriptions to Clay Labs' platform demonstrates that her identity has value, to wit, its inclusion in the platform. Clay Labs' business model is dependent on Davis's identity, and others like it. Clay Labs derives value through the accumulation of individual identities for its platform by (i) charging subscribers a monthly or yearly fee for access to those identities, and (ii) using the same identities for marketing purposes.

### Facts relating to Plaintiff Sruti Bhaumik (California)

69.     As of June 2026, the identity of Sruti Bhaumik was contained in Clay Labs' proprietary database and   accessible through Clay Labs' platform. The profile of Bhaumik contained in Clay Labs' database includes her name, job title, employer, employer's location, and other personal information. This information is accessible through Clay Labs' search function and is sufficient to identify Bhaumik.

70.     Potential customers availing themselves of Clay Labs' free trial can view information about Bhaumik by using their free account. In other words, Bhaumik's identity has been held out by Clay Labs for a commercial purpose, namely, to advertise monthly subscriptions to its platform.

71.     Clay Labs allows access to Bhaumik's personal information contained on its platform to have potential customers familiarize themselves with the platform in the hope that those customers are incentivized to enter into paid subscriptions for continued access to the platform. Thus, Bhaumik's identity has been used by Clay Labs to market paid subscriptions to its platform.

14

72. Bhaumik has no relationship with Clay Labs and does not utilize or subscribe to its platform.

73. Bhaumik did not give consent to Clay Labs to use her name, likeness, personal information, or identity for its platform, or for any other reason. Nor did Bhaumik provide Clay Labs with consent to use her identity for commercial purposes, as required by California law. Had Clay Labs requested her consent, Bhaumik would not have provided it.

74. Clay Labs' knowing and deliberate use of Bhaumik's identity to advertise subscriptions to its platform is misleading in that it gives the false impression that Bhaumik is a willing participant in the platform, which she is not, and that she wants to receive unsolicited communications from sales professionals, marketers, and business development representatives, which she does not.

75. Bhaumik has intellectual property and privacy interests in her name, likeness, and identity recognized by California law. Bhaumik has the right to exclude anyone from using her identity for commercial purposes without her consent.

76. Clay Labs has injured Bhaumik by knowingly and deliberately using her identity for its own commercial purposes without compensation or consent in violation of California's Right of Publicity statute.

77. The use of Bhaumik's identity to advertise subscriptions to Clay Labs' platform demonstrates that her identity has value, to wit, its inclusion in the platform. Clay Labs' business model is dependent on Bhaumik's identity, and others like it. Clay Labs derives value through the accumulation of individual identities for its platform by (i) charging subscribers a monthly or yearly fee for access to those identities, and (ii) using the same identities for marketing purposes.

15

**Facts relating to Plaintiff Brian Heinz (California)**

78.     As of June 2026, the identity of Brian Heinz was contained in Clay Labs' proprietary database and accessible through Clay Labs' platform. The profile of Heinz contained in Clay Labs' database includes his name, job title, employer, employer's location, and other personal information. This information is accessible through Clay Labs' search function and is sufficient to identify Heinz.

79.     Potential customers availing themselves of Clay Labs' free trial can view information about Heinz by using their free account. In other words, Heinz's identity has been held out by Clay Labs for a commercial purpose, namely, to advertise monthly subscriptions to its platform.

80.     Clay Labs allows access to Heinz's personal information contained on its platform to have potential customers familiarize themselves with the platform in the hope that those customers are incentivized to enter into paid subscriptions for continued access to the platform. Thus, Heinz's identity has been used by Clay Labs to market paid subscriptions to its platform.

81.     Heinz has no relationship with Clay Labs and does not utilize or subscribe to its platform.

82.     Heinz did not give consent, written or otherwise, to Clay Labs to use his name, likeness, personal information, or identity for its platform, or for any other reason. Nor did Heinz provide Clay Labs with consent to use his identity for commercial purposes as required by California law. Had Clay Labs requested his consent, Heinz would not have provided it.

83.     Clay Labs' knowing and deliberate use of Heinz's identity to advertise subscriptions to its platform is misleading in that it gives the false impression that Heinz is a willing participant in the platform, which he is not, and that he wants to receive unsolicited

16

communications from sales professionals, marketers, and business development representatives, which he does not.

84.     Heinz has intellectual property and privacy interests in his name, likeness, and identity recognized by California law. Heinz has the right to exclude anyone from using his identity for commercial purposes without his consent.

85.     Clay Labs has injured Heinz by knowingly and deliberately using his identity for its own commercial purposes without compensation or consent in violation of California's Right of Publicity statute.

86.     The use of Heinz's identity to advertise subscriptions to Clay Labs' platform demonstrates that his identity has value, to wit, its inclusion in the platform. Clay Labs' business model is dependent on Heinz's identity, and others like it. Clay Labs derives value through the accumulation of individual identities for its platform by (i) charging subscribers a monthly or yearly fee for access to those identities, and (ii) using the same identities for marketing purposes.

### Facts relating to Plaintiff Maxx Mills (Indiana)

87.     As of May 2026, the identity of Maxx Mills was contained in Clay Labs' proprietary database and accessible through Clay Labs' platform. The profile of Mills contained in Clay Labs' database includes his name, job title, employer, employer's location, and other personal information. This information is accessible through Clay Labs' search function and is sufficient to identify Mills.

88.     Potential customers availing themselves of Clay Labs' free trial, including those residing in Indiana, can view information about Mills using their free account. In other words, Mills's identity has been held out in Indiana by Clay Labs for a commercial purpose, namely, to advertise monthly subscriptions to its platform, in Indiana and elsewhere.

17

89. Clay Labs allows access to Mills's personal information contained on its platform to have potential customers familiarize themselves with the platform in the hope that those customers are incentivized to enter into paid subscriptions for continued access to the platform. Thus, Mills's identity has been used by Clay Labs to market paid subscriptions to its platform.

90. Based on the scope of Clay Labs' proprietary database and the number of profiles contained therein, Mills contends that his identity was used by Clay Labs to advertise subscription services to its platform in Indiana.

91. Mills has no relationship with Clay Labs and does not utilize or subscribe to its platform.

92. Mills did not give consent, to Clay Labs to use his name, likeness, personal information, or identity for its platform, or for any other reason. Nor did Mills provide Clay Labs with written consent to use his identity for commercial purposes, as required by Indiana law. Had Clay Labs requested his consent, Mills would not have provided it.

93. Clay Labs' knowing and deliberate use of Mills's identity to advertise subscriptions to its platform is misleading in that it gives the false impression that Mills is a willing participant in the platform, which he is not, and that he wants to receive unsolicited communications from sales professionals, marketers, and business development representatives, which he does not.

94. Mills has intellectual property interests in his name, likeness, and identity recognized by Indiana statutory law. Mills has the right to exclude anyone from using his identity for commercial purposes without his written permission.

95. Clay Labs has injured Mills by knowingly and deliberately using his identity for its own commercial purposes without compensation or written permission in violation of Indiana's Right of Publicity statute.

18

96.     The use of Mills's identity to advertise subscriptions to Clay Labs' platform demonstrates that his identity has value, to wit, its inclusion in the platform. Clay Labs' business model is dependent on Mills's identity, and others like it. Clay Labs derives value through the accumulation of individual identities for its platform by (i) charging subscribers a monthly or yearly fee for access to those identities, and (ii) using the same identities for marketing purposes.

**Facts relating to Plaintiff Amara Philebaum (Indiana)**

97.     As of May 2026, the identity of Amara Philebaum was contained in Clay Labs' proprietary database and accessible through Clay Labs' platform. The profile of Philebaum contained in Clay Labs' database includes her name, job title, employer, employer's location, and other personal information. This information is accessible through Clay Labs' search function and is sufficient to identify Philebaum.

98.     Potential customers availing themselves of Clay Labs' free trial, including those residing in Indiana, can view information about Philebaum using their free account. In other words, Philebaum's identity has been held out in Indiana by Clay Labs for a commercial purpose, namely, to advertise monthly subscriptions to its platform, in Indiana and elsewhere.

99.     Clay Labs allows access to Philebaum's personal information contained on its platform to have potential customers familiarize themselves with the platform in the hope that those customers are incentivized to enter into paid subscriptions for continued access to the platform. Thus, Philebaum's identity has been used by Clay Labs to market paid subscriptions to its platform.

100.    Based on the scope of Clay Labs' proprietary database and the number of profiles contained therein, Philebaum contends that her identity was used by Clay Labs to advertise subscription services to its platform in Indiana.

19

101. Philebaum has no relationship with Clay Labs and does not utilize or subscribe to its platform.

102. Philebaum did not give consent to Clay Labs to use her name, likeness, personal information, or identity for its platform, or for any other reason. Nor did Philebaum provide Clay Labs with written consent to use her identity for commercial purposes, as required by Indiana law. Had Clay Labs requested her consent, Philebaum would not have provided it.

103. Clay Labs' knowing and deliberate use of Philebaum's identity to advertise subscriptions to its platform is misleading in that it gives the false impression that Philebaum is a willing participant in the platform, which she is not, and that she wants to receive unsolicited communications from sales professionals, marketers, and business development representatives, which she does not.

104. Philebaum has intellectual property and privacy interests in her name, likeness, and identity recognized by Indiana statutory law. Philebaum has the right to exclude anyone from using her identity for commercial purposes without her written consent.

105. Clay Labs injured Philebaum by knowingly and deliberately using her identity for its own commercial purposes without compensation or written permission in violation of Indiana's Right of Publicity statute.

106. The use of Philebaum's identity to advertise subscriptions to Clay Labs' platform demonstrates that her identity has value, to wit, its inclusion in the platform. Clay Labs' business model is dependent on Philebaum's identity, and others like it. Clay Labs derives value through the accumulation of individual identities for its platform by (i) charging subscribers a monthly or yearly fee for access to those identities, and (ii) using the same identities for marketing purposes.

20

**Facts relating to Plaintiff Tyree Caldwell (Alabama)**

107. As of June 2026, the identity of Tyree Caldwell was contained in Clay Labs' proprietary database and accessible through Clay Labs' platform. The profile of Caldwell contained in Clay Labs' database includes his name, job title, employer, employer's location, and other personal information. This information is accessible through Clay Labs' search function and is sufficient to identify Caldwell.

108. Potential customers availing themselves of Clay Labs' free trial, including those residing in Alabama, can view information about Caldwell using their free account. In other words, Caldwell's identity has been held out in Alabama by Clay Labs for a commercial purpose, namely, to advertise monthly subscriptions to its platform, in Alabama and elsewhere

109. Clay Labs allows access to Caldwell's personal information contained on its platform to have potential customers familiarize themselves with the platform in the hope that those customers are incentivized to enter into paid subscriptions for continued access to the platform. Thus, Caldwell's identity has been used by Clay Labs to market paid subscriptions to its platform.

110. Based on the scope of the Clay Labs platform and the number of profiles contained therein, Caldwell contends that his identity was used by Clay Labs to advertise subscription services to its platform in Alabama.

111. Caldwell has no relationship with Clay Labs and does not utilize or subscribe to its platform.

112. Caldwell did not give consent, to Clay Labs to use his name, job title, company, email address, work location, other personal information, or identity for its platform, or for any other reason. Nor did Caldwell provide Clay Labs with consent, to use his identity for commercial purposes. Had Clay Labs requested his consent, Caldwell would not have provided it.

21

113. Clay Labs' knowing and deliberate use of Caldwell's identity to advertise subscriptions to its platform is misleading in that it gives the false impression that Caldwell is a willing participant in the platform, which he is not, and that he wants to receive unsolicited communications from sales professionals, marketers, and business development representatives, which he does not.

114. Caldwell has intellectual property and privacy interests in his name, likeness, and identity recognized by Alabama's Right of Publicity statute. Caldwell has the right to exclude anyone from using his identity for commercial purposes without his consent.

115. Clay Labs has injured Caldwell by knowingly and deliberately using his identity for its own commercial purposes without compensation or consent in violation of Alabama's Right of Publicity statute.

116. The use of Caldwell's identity to advertise subscriptions to Clay Labs' platform demonstrates that his identity has value, to wit, its inclusion in the platform. Clay Labs business model is dependent on Caldwell's identity, and others like it. Clay Labs derives value through the accumulation of individual identities for its platform by (i) charging subscribers a monthly or yearly fee for access to those identities, and (ii) using the same identities for marketing purposes.

### Facts relating to Plaintiff James Hurd (Alabama)

117. As of June 2026, the identity of James Hurd was contained in Clay Labs' proprietary database and accessible through Clay Labs' platform. The profile of Hurd contained in Clay Labs' database includes his name, job title, employer, employer's location, and other personal information. This information is accessible through Clay Labs' search function and is sufficient to identify Hurd.

118. Potential customers availing themselves of Clay Labs' free trial, including those residing in Alabama, can view information about Hurd using their free account. In other words,

22

Hurd's identity has been held out in Alabama by Clay Labs for a commercial purpose, namely, to advertise monthly subscriptions to its platform, in Alabama and elsewhere.

119. Clay Labs allows access to Hurd's personal information contained on its platform to have potential customers familiarize themselves with the platform in the hope that those customers are incentivized to enter into paid subscriptions for continued access to the platform. Thus, Hurd's identity has been used by Clay Labs to market paid subscriptions to its platform.

120. Based on the scope of the Clay Labs platform and the number of profiles contained therein, Hurd contends that his identity was used by Clay Labs to advertise subscription services to its platform in Alabama.

121. Hurd has no relationship with Clay Labs and does not utilize or subscribe to its platform.

122. Hurd did not give Clay Labs consent to use his name, job title, company, email address, work location, other personal information, or identity for its platform, or for any other reason. Nor did Hurd provide Clay Labs with consent, to use his identity for commercial purposes. Had Clay Labs requested his consent, Hurd would not have provided it.

123. Clay Labs' knowing and deliberate use of Hurd's identity to advertise subscriptions to its platform is misleading in that it gives the false impression that Hurd is a willing participant in the platform, which he is not, and that he wants to receive unsolicited communications from sales professionals, marketers, and business development representatives, which he does not.

124. Hurd has intellectual property and privacy interests in his name, likeness, and identity recognized by Alabama's Right of Publicity statute. Hurd has the right to exclude anyone from using his identity for commercial purposes without his consent.

125. Clay Labs has injured Hurd by knowingly and deliberately using his identity for its own commercial purposes without compensation or consent in violation of Alabama's Right of Publicity statute.

126. The use of Hurd's identity to advertise subscriptions to Clay Labs' platform demonstrates that his identity has value, to wit, its inclusion in the platform. Clay Labs' business model is dependent on Hurd's identity, and others like it. Clay Labs derives value through the accumulation of individual identities for its platform by (i) charging subscribers a monthly or yearly fee for access to those identities, and (ii) using the same identities for marketing purposes.

**Facts relating to Plaintiff Rex Waer (Alabama)**

127. As of June 2026, the identity of Rex Waer was contained in Clay Labs' proprietary database and accessible through Clay Labs' platform. The profile of Waer contained in Clay Labs' database includes his name, job title, employer, employer's location, and other personal information. This information is accessible through Clay Labs' search function and is sufficient to identify Waer.

128. Potential customers availing themselves of Clay Labs' free trial, including those residing in Alabama, can view information about Waer using their free account. In other words, Waer's identity has been held out in Alabama by Clay Labs for a commercial purpose, namely, to advertise monthly subscriptions to its platform, in Alabama and elsewhere.

129. Clay Labs allows access to Waer's personal information contained on its platform to have potential customers familiarize themselves with the platform in the hope that those customers are incentivized to enter into paid subscriptions for continued access to the platform. Thus, Waer's identity has been used by Clay Labs to market paid subscriptions to its platform.

130. Based on the scope of the Clay Labs platform and the number of profiles contained therein, Waer contends his identity was used by Clay Labs to advertise subscription services to its platform in Alabama.

131. Waer has no relationship with Clay Labs and does not utilize or subscribe to its platform.

132. Waer did not give consent to Clay Labs to use his name, job title, company, email address, work location, other personal information, or identity for its platform, or for any other reason. Nor did Waer provide Clay Labs with consent, to use his identity for commercial purposes. Had Clay Labs requested his consent, Waer would not have provided it.

133. Clay Labs' knowing and deliberate use of Waer's identity to advertise subscriptions to its platform is misleading in that it gives the false impression that Waer is a willing participant in the platform, which he is not, and that he wants to receive unsolicited communications from sales professionals, marketers, and business development representatives, which he does not.

134. Waer has intellectual property and privacy interests in his name, likeness, and identity recognized by Alabama's Right of Publicity statute. Waer has the right to exclude anyone from using his identity for commercial purposes without his consent.

135. Clay Labs has injured Waer by knowingly and deliberately using his identity for its own commercial purposes without compensation or consent in violation of Alabama's Right of Publicity statute.

136. The use of Waer's identity to advertise subscriptions to Clay Labs' platform demonstrates that his identity has value, to wit, its inclusion in the platform. Cly Labs business model is dependent on Waer's identity, and others like it. Clay Labs derives value through the

accumulation of individual identities for its platform by (i) charging subscribers a monthly or yearly fee for access to those identities, and (ii) using the same identities for marketing purposes.

## CLASS ALLEGATIONS

137. Plaintiffs bring this action on behalf of themselves, and all others similarly situated, as a class action pursuant to 735 ILCS § 5/2-801.

138. Each Plaintiff seeks to represent a class of individuals comprised of citizens and residents of the state from which they are citizens and residents. These respective classes are defined as follows:

> **A. Illinois Class:** All current and former Illinois residents who are not subscribers to Clay Labs' platform and whose identities are or have been used to market paid subscriptions for Clay Labs' platform.
>
> **B. California Class:** All current and former California residents who are not subscribers to Clay Labs' platform and whose identities are or have been used to market paid subscriptions for Clay Labs' platform.
>
> **C. Indiana Class:** All current and former Indiana residents who are not subscribers to Clay Labs' platform and whose identities are or have been used to market paid subscriptions for Clay Labs' platform.
>
> **D. Alabama Class:** All current and former Alabama residents who are not subscribers to Clay Labs' platform and whose identities are or have been used to market paid subscriptions for Clay Labs' platform.

139. Excluded from the classes are Clay Labs, its officers, directors, shareholders, employees, attorneys (and attorney family members), and members of the judiciary. Plaintiffs reserve the right to amend the Class definitions upon completion of class discovery when the contours and the parameters of the Classes become more apparent.

140. **Numerosity.** Class Members are so numerous that joinder of all members is impractical. Based on the investigation by their counsel and representations made by Clay Labs about its platform, Plaintiffs reasonably believe that each Class comprises thousands of current and former residents of Illinois, California, Indiana, and Alabama, whose identities are contained

26

in and/or viewable on Clay Labs' platform. The exact number of persons in each Class can be determined from records maintained by Clay Labs, but certainly exceeds 40 persons for each Class, and is estimated to be in the thousands for each state.

141. **Common Questions of Law and Fact Predominate.** Many common questions of law and fact exist as to Plaintiffs and members of each Class, and those questions substantially predominate any questions that may affect individual Class Members. Common questions of fact and law include, but are not limited to:

(a) whether Clay Labs uses Plaintiffs' and Class Members' identities to market its platform for its own commercial benefit;

(b) whether Clay Labs obtained consent from Plaintiffs and the Class Members prior to using their identities to promote its platform as required by the respective state statutes;

(c) whether the conduct described herein constitutes violations of right of publicity statutes for Illinois, California, Indiana, and Alabama;

(d) whether Clay Labs' commercial use of Plaintiffs' and the Class Members' identities was willful, such that Plaintiffs and the Classes are entitled to punitive damages under applicable state laws; and

(e) whether Plaintiffs and Class Members are entitled to declaratory, injunctive, and monetary relief as requested.

142. Plaintiffs and Class Members have a commonality of interest in the subject matter of the lawsuit and remedies sought.

143. **Typicality**. Plaintiffs' claims are typical of the claims of Class Members. Clay Labs' misuse of Plaintiffs' and Class Members' identities, personal information, and other identifying information was the same for each.

144. **Adequacy of Representation.** Plaintiffs will fairly and adequately protect the interests of the members of their Class. Plaintiffs have retained competent counsel experienced in class action litigation in state and federal courts nationwide, and Plaintiffs have no interest adverse to any member of the Classes. Plaintiffs intend to prosecute this case vigorously on behalf of themselves and their Class.

145. **Superiority of Class Action**. A class action is an appropriate method for the fair and efficient adjudication of the controversy pursuant to 735 ILCS § 5/2-801(4) because it involves a uniform course of conduct equally applicable to Plaintiffs and all members of the Classes. A class action will permit a large number of relatively small claims involving virtually identical facts and legal issues to be resolved efficiently in one proceeding based upon common proofs and can therefore best secure the economies of time, effort and expense and accomplish the other ends of equity and justice that this action seeks to obtain.

## COUNT I—VIOLATION OF ILLINOIS RIGHT OF PUBLICITY ACT
### (on behalf of the Illinois Class)

Plaintiffs incorporate the above paragraphs by reference and further allege—

146. The Illinois Right of Publicity Act ("IRPA") defines "right of publicity" as the "right to control and to choose whether and how to use an individual's identity for commercial purposes." 765 ILCS § 1075/10.

147. IRPA prohibits and provides damages for using an individual's identity for commercial purposes without first obtaining written consent. 765 ILCS § 1075/30.

148.     By engaging in the foregoing acts and omissions, Clay Labs used the identities of Burzawa, Davis, and Illinois Class Members for commercial purposes without first obtaining written consent.

149.     Each use of Burzawa's, Davis's, and Illinois Class Members' identities through Clay Labs' platform to market paid subscriptions is a separate and distinct violation of IRPA giving rise to damages.

150.     Under IRPA, Clay Labs is liable for the greater of: (i) statutory damages in the amount of $1,000 per violation; or (ii) the sum of "actual damages" and "profits derived from the unauthorized use." 765 ILCS § 1075/40. IRPA also provides for punitive damages if the violation is willful and injunctive relief. 765 ILCS § 1075/40 & 50.

151.     As a result of Clay Labs' violations of IRPA, Burzawa, Davis, and the Illinois Class have suffered injury to their privacy rights and economic damages. Burzawa, Davis, and Illinois Class Members have been denied the commercial use and value of their identities, which Clay Labs used without permission from or compensation to Plaintiffs Burzawa, Davis, and the Illinois Class. Burzawa, Davis, and Illinois Class Members were denied their statutorily protected right to control how their identities are used and suffered damages based on that misuse.

152.     Burzawa and Davis, on behalf of the Illinois Class, seek: statutory damages for each violation of IRPA, or alternatively, actual damages and profits derived from the unauthorized use of Burzawa's, Davis's, and Plaintiffs' and Illinois Class Members' identities, whichever is greater; punitive damages if it is found that Clay Labs' actions were willful; prejudgment interest; injunctive and declaratory relief; and an award of attorneys' fees and costs.

## COUNT II—VIOLATION OF CALIFORNIA CIVIL CODE § 3344 *et seq.*
### (on behalf of the California Class)

Plaintiffs incorporate the above paragraphs by reference and further allege—

29

153. As stated, California's Right of Publicity Statute, California Civil Code § 3344, prohibits the knowing use of "another's name, voice, signature, photograph, or likeness, in any manner . . . without such person's prior consent." Cal. Civ. Code § 3344.

154. Section 3344 provides for damages for any such violation in the amount of $750 or the actual damages suffered on account of the unauthorized use. It also provides for the possibility of an award for punitive damages. *Id.*

155. By engaging in the foregoing acts and omissions, Clay Labs used the identities of Bhaumik, Heinz, and California Class Members for commercial purposes without first obtaining prior consent.

156. The identities of Bhaumik, Heinz, and California Class Members have commercial value since they are used by Clay Labs to provide worth to and market Clay Labs' platform.

157. Each use of Bhaumik's, Heinz's, and California Class Members' identities is a separate and distinct violation of § 3344 giving rise to damages.

158. As a result of Clay Labs' violations, Bhaumik, Heinz, and California Class Members have suffered injury to their privacy rights as well as economic damages. Bhaumik, Heinz, and California Class Members have been denied the commercial value of their identities, which Clay Labs used without consent from or compensation to Bhaumik, Heinz, and California Class Members. Bhaumik, Heinz, and California Class Members were denied their statutorily protected right to control how their identities are used and suffered damages based on that misuse.

159. Bhaumik and Heinz, on behalf of themselves and the California Class, seek statutory damages for each violation of section 3344, or alternatively, actual damages suffered by Bhaumik, Heinz, and California Class Members for the unauthorized use, whichever is greater; punitive damages, if warranted; prejudgment interest; injunctive and declaratory relief; and an award of attorneys' fees and costs.

30

## COUNT III—VIOLATION OF INDIANA PUBLICITY STATUTE
### (on behalf of the Indiana Class)

Plaintiffs incorporate the above paragraphs by reference and further allege—

160. As stated, Indiana's Publicity Code, IC § 32-36-1-8, prohibits the commercial use of an individual's "personality," which includes the individual's name and other identifying characteristics, so long as they have value, without written consent.

161. Section 32-36-1-10 of the Code provides for $1,000 or actual damages, whichever is greater, and treble or punitive damages if the violation is "knowing, willful, or intentional." The Indiana statute further provides for injunctive relief. IC § 32-36-1-12.

162. By engaging in the foregoing acts and omissions, Clay Labs knowingly and deliberately used Mills's, Philebaum's, and Indiana Class Members' personalities for commercial purposes, in Indiana and elsewhere, without first obtaining written consent.

163. The personalities of Mills, Philebaum, and Indiana Class Members have commercial value since they are used by Clay Labs to provide worth to and market Clay Labs' platform.

164. Each use of Mills's, Philebaum's, and Indiana Class Members' personalities is a separate and distinct violation giving rise to damages.

165. As a result of Clay Labs' violations, Mills, Philebaum, and Indiana Class Members have suffered injury to their right of publicity as well as economic damages. Mills, Philebaum, and Indiana Class Members have been denied the commercial value of their personalities, which Clay Labs knowingly and deliberately used without consent from or compensation to Mills, Philebaum, and Indiana Class Members. Mills, Philebaum, and Indiana Class Members were denied their statutorily protected right to control how their personalities are used and suffered damages based on that misuse.

31

166. Mills, and Philebaum, on behalf of themselves and the Indiana Class, seek damages for each violation of IC § 32-36-1-8; treble or punitive damages, if warranted; prejudgment interest; injunctive and declaratory relief; and an award of attorneys' fees and costs.

## COUNT IV—VIOLATION OF ALABAMA RIGHT OF PUBLICITY STATUTE
### (on behalf of the Alabama Class)

Plaintiffs incorporate the above paragraphs by reference and further allege—

167. As stated, ARPA prohibits the use of an individual's identity "for purposes of advertising or selling, or soliciting purchases of, products, goods, merchandise, or services …. without consent." AL ST § 6-5-772.

168. Any person who establishes a violation of ARPA shall be eligible to receive: (i) statutory damages of $5,000 per action or compensatory damages including the Defendant's profits, (ii) any other damages available under Alabama law, including punitive damages and (iii) injunctive relief. AL ST § 6-5-774. Liability attaches whether the use is for profit or not. AL ST § 6-5-772.

169. By engaging in the foregoing acts and omissions, Clay Labs used the identities of Caldwell, Hurd, Waer, and Alabama Class Members for commercial purposes, in Alabama and elsewhere, without obtaining prior consent.

170. The identities of Caldwell, Hurd, Waer, and Alabama Class Members have commercial value since they are used by Clay Labs to provide worth to and market Clay Labs' platform.

171. Each use of Caldwell's, Hurd's, Waer's, and Alabama Class Members' identity is a separate and distinct violation of ARPA.

172. As a result of Clay Labs' violations, Caldwell, Hurd, Waer, and Alabama Class Members have suffered injury to their right of publicity as well as economic damages. Caldwell,

32

Hurd, Waer, and Alabama Class Members have been denied the commercial value of their identities, which Clay Labs used without consent from or compensation to Caldwell, Hurd, Waer, and Alabama Class. Caldwell, Hurd, Waer, and Alabama Class Members were denied their statutorily protected right to control how their identities are used and suffered damages based on that misuse.

173.     Caldwell, Hurd, and Waer, on behalf of themselves and the Alabama Class, seek damages for each violation of ARPA in the amount of $5,000 per action, or compensatory damages including Clay Labs' profits; any other damages available under Alabama law, including punitive damages; injunctive relief; prejudgment interest; and an award of attorneys' fees and costs.

**WHEREFORE**, Plaintiffs Anna Burzawa, Joann Davis, Sruti Bhaumik, Brian Heinz, Maxx Mills, Amara Philebaum, Tyree Caldwell, James Hurd, and Rex Waer, individually and on behalf of all other similarly situated persons, demand judgment in their favor and against Defendant as follows:

A.     Certifying this case as a class action and appointing Plaintiffs and their attorneys as Class representatives and Class counsel, respectively;

B.     Declaring that Clay Labs' actions, as described herein, violate the right of publicity statutes in Illinois, California, Indiana, and Alabama;

C.     Awarding statutory damages to Plaintiffs and the Classes for each violation of the respective statutes, or, alternatively, actual damages and profits derived from the unauthorized use of Plaintiffs' and Class Members' identities, whichever is greater, plus prejudgment interest;

33

D.     Awarding punitive or exemplary damages to Plaintiffs and the Classes for each violation of the respective statutes, if appropriate.

E.     Enjoining Clay Labs from committing further violations of their right of publicity;

F.     Awarding Plaintiffs their reasonable attorneys' fees and costs incurred in filing and prosecuting this action; and

G.     Awarding such other and further relief as this Court deems appropriate and just.

Respectfully Submitted,

Anna Burzawa, Joann Davis, Sruti Bhaumik, Brian Heinz, Maxx Mills, Amara Philebaum, Tyree Caldwell, James Hurd, and Rex Waer, individually and as the representatives of classes of similarly-situated persons,

By: */s/ Patrick J. Solberg*_____
One of Plaintiffs' attorneys

Patrick J. Solberg
Brian J. Wanca
Wallace C. Solberg
ANDERSON + WANCA
DuPage Firm ID: #57010   11575 clk
3701 Algonquin Road
Suite 500
Rolling Meadows, IL 60008
psolberg@andersonwanca.com
bwanca@andersonwanca.com
wsolberg@andersonwanca.com

34

## IN CIRCUIT COURT FOR THE EIGHTEENTH JUDICIAL CIRCUIT
## DUPAGE COUNTY, ILLINOIS

Candice Adams
e-filed in the 18th Judicial Circuit Court
DuPage County
ENVELOPE: 38655287
2026LA000832
FILEDATE: 6/22/2026 8:14 AM
Date Submitted: 6/22/2026 8:14 AM
Date Accepted: 6/22/2026 4:19 PM
SF

|  |  |
|---|---|
| ANNA BURZAWA, JOANN DAVIS, SRUTI BHAUMIK, BRIAN HEINZ, MAXX MILLS, AMARA PHILEBAUM, TYREE CALDWELL, JAMES HURD, and REX WAER individually and as representatives of classes of similarly-situated persons,<br><br>Plaintiffs,<br><br>v.<br><br>CLAY LABS INC., a Delaware corporation,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)  Case No.: 2026LA000832<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

Plaintiffs Anna Burzawa, Joann Davis, Sruti Bhaumik, Brian Heinz, Maxx Mills, Amara Philebaum, Tyree Caldwell, James Hurd, and Rex Waer (collectively "Plaintiffs"), through their attorneys, respectfully move this Court, pursuant to 735 ILCS 5/2-801, *et seq.*, to certify for class action treatment the following classes, as described in Plaintiffs' Class Action Complaint:

**A. Illinois Class:** All current and former Illinois residents who are not subscribers to Clay Labs' platform and whose identities are or have been used to market paid subscriptions for Clay Labs' platform.

**B. California Class:** All current and former California residents who are not subscribers to Clay Labs' platform and whose identities are or have been used to market paid subscriptions for Clay Labs' platform.

**C. Indiana Class:** All current and former Indiana residents who are not subscribers to Clay Labs' platform and whose identities are or have been used to market paid subscriptions for Clay Labs' platform.

**D. Alabama Class:** All current and former Alabama residents who are not subscribers to Clay Labs' platform and whose identities are or have been used to market paid subscriptions for Clay Labs' platform.

Excluded from the classes are Clay Labs, its officers, directors, shareholders, employees, attorneys (and attorney family members), and members of the judiciary.

Plaintiffs will file a supporting Memorandum of Law in due course.

WHEREFORE, Plaintiffs Anna Burzawa, Joann Davis, Sruti Bhaumik, Brian Heinz, Maxx Mills, Amara Philebaum, Tyree Caldwell, James Hurd, and Rex Waer, pray that this Court enter an order pursuant to 735 ILCS 5/2-801 certifying for class treatment the classes set forth herein.

Respectfully submitted,

Anna Burzawa, Joann Davis, Sruti Bhaumik, Brian Heinz, Maxx Mills, Amara Philebaum, Tyree Caldwell, James Hurd, and Rex Waer, individually and as the representatives of classes of similarly-situated persons,

By: _s/ Patrick J. Solberg_
One of their attorneys

Patrick J. Solberg
Brian J. Wanca
Wallace C. Solberg
ANDERSON + WANCA
DuPage County Firm #11575
3701 W. Algonquin Rd. Ste 500
Rolling Meadows, IL 60008
Telephone: (847) 368-1500
psolberg@andersonwanca.com
bwanca@andersonwanca.com
wsolberg@andersonwanca.com

2

## CERTIFICATE OF SERVICE

I hereby certify that on June 22, 2026, I electronically filed the foregoing Motion for Class Certification with the Clerk of the Court using the court's electronic filing system which will send notification of such filings to all counsel of record and a copy will be served on Defendant along with the Complaint and Summons.

/s/ Patrick J. Solberg

3