**UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| ANNA BURZAWA, JOANN DAVIS, SRUTI BHAUMIK, BRIAN HEINZ, CARLENE LEVELS, MAXX MILLS, AMARA PHILEBAUM, TYREE CALDWELL, JAMES HURD, and REX WAER individually and as representatives of classes of similarly-situated persons, | ) | Case No.: 1:26-cv-8814 |
| Plaintiffs, | ) | Hon. Sharon John Coleman<br>Magistrate Judge: Hon. M. David Weisman |
| v. | ) | |
| CLAY LABS INC., a Delaware corporation, | ) | |
| Defendant. | ) | |

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO MOTION TO DISMISS**

Patrick J. Solberg
Wallace C. Solberg
ANDERSON + WANCA
3701 W. Algonquin Rd. Ste 500
Rolling Meadows, IL 60008
Telephone: (847) 368-1500
psolberg@andersonwanca.com
wsolberg@andersonwanca.com

## Introduction

Plaintiffs bring this matter as a class action and allege that Defendant Clay Labs Inc. ("Clay") violated their right of publicity ("ROP") under state statutes in Illinois, California, Indiana, and Alabama. These statutes prohibit the use of a person's name and/or other personal identifying information for commercial purposes without first obtaining consent, written or otherwise. *See* Illinois Right of Publicity Act ("IRPA"), 765 ILCS § 1075/1 *et seq.*; California Civil Code § 3344, *et seq*.; Indiana Publicity Code ("IPC"), IC 32-36-1 *et seq*.; and Alabama Right of Publicity Act ("ARPA") Ala. Code 1975 § 6-5-770 *et seq*.

Plaintiffs allege Clay Labs violated these statutes by using their names and identifying information to market paid subscriptions to its internet-based, people search platform without first obtaining consent to do so. Specifically, Clay Labs offers a fourteen-day free trial of its platform, which provides access to its proprietary database containing identifying information of Plaintiffs and other professionals. Plaintiffs allege that Clay Labs uses this trial, and access to the database, to entice potential customers to enter into monthly subscriptions for the platform. Federal district courts here and elsewhere have consistently found such allegations sufficient to state a cause of action. *See Lukis v. Whitepages, Inc. ("Lukis I"),* 454 F. Supp. 3d 746, 760 (N.D. Ill. 2020) (the use of a person's name and identity in a free preview to solicit subscriptions for an online web database is "a textbook example under the IRPA of using a person's identity for a commercial purpose"); *Green v. Datanyze*, 2024 WL 168123, at *2 (N.D. Ill. Jan. 16, 2024) (same) (collecting cases); *Mackey v. PeopleConnect, Inc.*, 2023 WL 2561621, at *10 (N.D. Ill. Mar. 17, 2023) (*vacated on other grounds*, 22-cv-342, Doc. 91, Aug. 2, 2023) (same); *Gaul v. CheckPeople, LLC*, 2022 WL 3212067, at *3-4 (C.D. Ill. Aug. 9, 2022) (same); *Siegel v. Zoominfo Tech., LLC*, 2021 WL 4306148, at *3 (Sept. 22, 2021) (same); *Bonilla v. Ancestry.com Operations, Inc.*, 574 F.

Supp. 3d 582, 595 (N.D. Ill. 2021); *Krause v. RocketReach, LLC*, 561 F. Supp. 3d 778, 782-83 (N.D. Ill. 2021) (same); *Kis v. Cognism, Inc.*, 2024 WL 3924553, at *5-*6 (N.D. Cal. Aug. 23, 2024) (Cal. Civ. Code § 3344); *Fry v. Ancestry.com Operations Inc.*, 2023 WL 2631387, at *6 (N.D. Ind. Mar. 24, 2023) (Indiana Publicity Code); and *Camacho v. Control Group Media Co., LLC*, 2022 WL 3093306, at *30 (S.D. Cal. July 18, 2022) (Cal. Civ. Code § 3344 and ARPA).

Clay Labs seeks dismissal under Fed. R. Civ. P. 12(b)(6), arguing that: (i) "use" or "holding out" under the ROP statutes at issue requires third-party viewership of Plaintiffs' identities during the free trial; (ii) the advertisements for monthly subscriptions are "unconnected" to specific identities and therefore do not constitute commercial use/purpose under the ROP statutes; and (iii) Plaintiffs' "proposed application" of the right of publicity statutes at issue would "raise serious First Amendment concerns." Clay Labs' arguments are without merit and impermissibly ignore the allegations of the Complaint.

The right of publicity statutes at issue are concerned with the commercial use of identities without consent, not whether that unlawful use was viewed by third parties. Thus, courts have repeatedly held that third party viewership is not required to state a claim. *See infra* at 5-7. Nor is there a requirement that the advertisements must be connected to a specific individual. But even if there were such a requirement, Plaintiffs allege just that. Finally, Plaintiffs' Complaint does not challenge the creation of a database; rather, Plaintiffs' Complaint focuses on Clay Labs' use of their identities for advertising subscription access to that database. In other words, Plaintiffs are challenging Clay Lab's commercial speech, the regulation of which is permitted under the First Amendment.

**<u>Statement of Relevant Facts</u>**

Clay Labs operates an AI-powered go-to-market data and workflow platform. (Compl. ¶

3). Users of the platform can access Clay Labs' proprietary database, which contains personal information about individuals, including each of the Plaintiffs here. The information of each individual is presented as a profile and contains the individuals' full names, job titles, employer names, company locations, work email addresses, and personal email addresses. (*Id.* ¶¶ 4, 37, 30). The platform enables sales and marketing professionals to research prospects, build targeted contact lists, and launch personalized outreach campaigns at scale. *Id.* ¶ 3.

Clay Labs offers a limited version of its platform for free. (*Id.* ¶ 5). Clay Labs also offers more expansive versions for a subscription price. (*Id.*) For all versions, Clay Labs provides prospective subscribers with a 14-day free trial and provides them with 1,000 data credits which allow access to available features on the platform. *(Id.* ¶¶ 5, 6, 38, 41). During the free trial, users can search for individuals using various filters including name, company, job title, and location. (*Id.* ¶ 42). The platform then surfaces a list of named individuals matching those filters, displaying for each person their first name, last name, employer, company location, and work email address. (*Id.*) Each search and enrichment action consumes a portion of the user's 1,000 trial credits, which are depleted as the user explores the platform. (*Id.*) However, during the free trial, Clay Labs limits these searches. For instance, when a trial user searches for individuals, Clay Labs displays the existence of a larger list of results but restricts access to a limited subset—for example, showing only 50 of 1,000 matching individuals—and prompts the user to upgrade to a paid subscription to access the remainder. (*Id.* ¶¶ 7, 45). Thus, the names of the individuals displayed are tied directly to an advertisement to upgrade to a paid subscription. (*Id.* ¶ 44). Similarly, Clay Labs categorically withholds certain data, including cell phone numbers, gender, and home address, regardless of a user's credit balance during the trial and advertises those attributes as accessible only upon upgrading to a paid plan. (*Id.* ¶¶ 7, 39, 44).

The purpose behind Clay Labs providing users with a free trial and the ability to access a

limited number of individuals' records is to advertise and convince prospective customers to purchase subscriptions to paid plans, where users can access exponentially more personal information for as long as the monthly subscriptions are paid. By allowing prospective customers to sample real individuals' personal information through the free trial, Clay Labs uses Plaintiffs' and Class Members' identities as marketing tools to demonstrate the value of its paid subscriptions. (*Id.* ¶¶ 52-53, 61-62, 70-71, 79-80, 88-89, 98-99, 108-109, 118-119, 128-129). This "try-before-you-buy" model transforms Plaintiffs' and Class Members' identities into advertising content for Clay Labs' commercial benefit, effectively making them unwilling spokespersons for Clay Labs' subscription services without their knowledge, consent, or compensation. *Id.* ¶ 46.

## Standard of Review

When considering a Rule 12(b)(6) motion to dismiss, plaintiff's well-pled allegations are assumed as true, and the plaintiff is entitled to all reasonable inferences from those allegations. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The complaint need not provide detailed factual allegations; it need only provide the grounds for entitlement to relief and set forth factual allegations sufficient to raise a right to relief above the "speculative" level. *Id.* It is not enough that the district court suspects the plaintiff will ultimately "fail to find evidentiary support for his allegations or prove his claim to the satisfaction of the factfinder." *Id.* at 563 n.8. The plaintiff need only make out a "plausible" case. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## Argument

### I. Plaintiffs state a claim for violation of IRPA, § 3344, IPC, and ARPA—Clay Labs used and/or held out Plaintiffs' identities in free trials, without consent, for a commercial purpose, namely, to advertise and sell subscriptions to its Platform.

Each right of publicity statute at issue has a similar intent—the protection of an individual's name and likeness from unauthorized commercial use. The statutes do this by providing a cause of action for such unauthorized commercial use of an individual's name and other identifying

information. *See* IRPA, 1075 ILCS§ 1075/40; California Civil Code § 3344; Indiana's Publicity Code, IC § 32-36-1-8; AL ST 1975 § 6-5-772. To state a claim under these statutes, a plaintiff must allege that the defendant used his or her name, identity, and personality for commercial purposes without consent, written or otherwise. Plaintiffs' allegations do just that.

Plaintiffs allege that Clay Labs operates a platform accessible at its website geared towards sales and marketing professionals. This platform enables users to search through Clay Labs' proprietary database, which contains personal information about individuals, including individuals' full names, job titles, employer names, company locations, work email addresses, and personal email addresses. The stated goal of providing this information is to help users of the platform research prospects, build targeted contact lists, and launch personalized outreach campaigns at scale. Central to this goal are the names and identifying information of individuals profiled in the database, including Plaintiffs. Clay Labs offers a 14-day free trial, providing users free access to its database and use of their target generating platform. Plaintiffs allege that their names and identifications are held out by Clay Labs during this free trial to entice users of the platform to enter into paid monthly subscriptions for continued access. (*See* Compl. ¶¶ 6, 52, 61, 70, 79, 88, 98, 108, 118). That is sufficient to state a cause of action under each statute at this stage of the litigation. *Green*, 2024 WL 168123, at *2; *Kis*, 2024 WL 3924553, at *5-*6; *Fry*, 2023 WL 2631387, at *6; *Camacho*, 2022 WL 3093306, at *30; *see also supra* at 1-2

Clay Labs does not address these authorities. Instead, Clay Labs argues that "because Plaintiffs do not allege their identities were actually searched or otherwise accessed through Clay by a free trial (or any other) user, none has pleaded the 'use' needed to state a claim under IRPA, Section 3344, the Indiana Publicity Code, or the ARPA." (Mem. at 6, 9). Clay Labs is mistaken. Courts have repeatedly held that third party viewership is not required to state a claim. *See, e.g.*,

*Fischer v. Instant Checkmate LLC*, 2022 WL 971479, at *10 (N.D. Ill. Mar. 31, 2022) ("the term 'holding out' does not require that the individual's identity was seen by others" and "thus turns on the defendant's conduct, not on what the public perceived," and that third party viewership "is immaterial" to whether the defendant "violated the IRPA by holding out that person's identity in connection with the offering for sale of its services") (citing *Trannel v. Prairie Ridge Media, Inc*., 987 N.E. 2d at 930, 2013 IL. App (2d) 120725, ¶¶ 21, 22); *Mackey*, 2023 WL 2561621, at *8 (rejecting argument that "the *sine qua non* of an [Illinois right of publicity] violation is the publication of a person's identity to a third party" and holding that "third-party viewing is not an element of an [Illinois right of publicity] claim"); *Kis*, 2024 WL 3924553, at *4 ("It is the unauthorized use of an individual's name or advertising that California Civil Code § 3344, not its viewing").

In *Nolen v. PeopleConnect, Inc.*, 2023 WL 4303645, at *2 (N.D. Cal. June 30, 2023), the court rejected the argument that because there were no allegations that anyone viewed plaintiff's image, plaintiff alleged nothing more than a "mere possibility of a future display in an advertisement," stating "to hold that images are only commercially used once they are actually seen by a consumer makes little practical sense. It would be as if an image within a newspaper advertisement were not commercially used until a customer paid their quarter, unlocked the news rack, opened the paper, began reading, opened the page containing the relevant circular, and saw it." *Id.* The court continued: "Defendant uses Plaintiff's image as bait, betting on the *chances* that Plaintiff's image will be seen by *some* viewers, some of whom will be thereby induced to further click and subscribe to Defendant's product. So viewed, appropriation is not contingent on the ultimate success [of] Defendant's campaign (actual viewership and resulting sales)." *Id.* at *4 (emphasis in original). In so holding, the court noted that "holding out" under IRPA "does not

impose a viewership requirement," citing *Fischer*, 2022 WL 971479, at *10, and *Lukis v. Whitepages Inc*. ("*Lukis II*"), 542 F. Supp. 3d 831, 836-38 (N.D. Ill. 2020), and stated: "This Court sees no material distinction between 'use' under § 3344 and 'hold out' under IRPA," *Id*. at *5; *see also, id.* at *5-6 (decisions interpreting other states' right of publicity statutes have "unequivocally held that third-party viewership is not an element of a right of publicity claim") (citing cases); *Mannacio v. Information.com, LLC*, 2024 WL 4557678, at *3 (Oct. 22, 2024) (same).

Central to Clay Labs' third-party viewership argument is the summary judgment decision rendered in *Hoffower v. Seamless*, 736 F.3d 605, 613 (N.D. Ill. 2024), which Clay Labs deems as the leading case on this issue. (Mem. at 6). Yet, this decision cuts against Clay Labs' argument. There, unlike the instant case, the defendant's (Seamless) platform did not maintain a fixed archive of profiles for individuals or businesses; it operated "entirely in real time," displaying search results that were "compiled from available internet sources using the algorithm." 736 F. Supp. 3d at 608. Indeed, the *Hoffower* court distinguished *Fischer*, 2022 WL 971479, at *10, on that very basis: "[U]nlike the defendant in *Fischer*, there is no evidence that Seamless stores the information that appears on its platform in an electronic database or directory." 736 F. Supp. 3d at 615.

Underscoring that distinction, the *Hoffower* court stated, "although state and federal court guidance on the application of IRPA in the context of real-time search engines is limited, '[s]tatutory interpretation begins with the plain language of the statute.'" 736 F. Supp. 3d at 615. *Hoffower* then held: "IRPA defines an individual's right of publicity as '[t]he right to control and to choose whether and how to use an individual's identity for a commercial purpose," *see* 765 ILCS § 1075/10, and that right "is infringed only if the defendant used or exercised control over the plaintiff's identity in a manner to which the plaintiff did not consent." *Id*. On the summary judgment record before it, the court held that plaintiff's identity (when searched for by her

attorney) was only "used" by Seamless "to the extent that her identifying information could ***potentially*** appear among the billions of data points that Seamless' algorithm draws from to complete users' search queries," which the court found insufficient to constitute "holding out" her identity. *Id*. (emphasis added).

That is not the case here—Plaintiffs have alleged that their identities and profiles were compiled by, and are contained in, Clay Labs' database and are accessible by potential customers of the platform via the free trial without Plaintiffs' consent. (Compl. ¶¶ 47, 51-55, 60-64, 69-73, 78-82, 87-92, 97-102, 107-112, 117-122). In other words, Plaintiffs allege that Clay Labs "used or exercised control over the plaintiff's identity in a manner to which the plaintiff did not consent," which states an IRPA claim under the *Hoffower* rationale. 736 F. Supp. 3d at 615.

Clay Labs' reliance on *Braundmeier v. Ancestry.Com Operations, Inc*. 764 F. Supp. 3d 749 (N.D. Ill. 2025), and *Ridgeway v. Spokeo, Inc.*, 697 F. Supp. 3d 979, 981-82, 986-87 (C.D. Cal. 2023) is equally flawed. In *Braundmeier*, also decided on summary judgment, there was no "real time search engine" using algorithms to scour the Internet for information, making its reliance on the *Hoffower II* rationale mistaken. 2025 WL 327768, at *2-5. Instead, there was a database containing plaintiffs' identities that were held out by defendant, which states a claim under *Hoffower II*. In short, *Braundmeier* misapplied *Hoffower II*, and erroneously imposed a third-party viewership requirement for commercial use. The correct application of *Hoffower* to the facts in *Braundmeier* would have resulted in the denial of summary judgment because the defendant there, like Clay Labs here, "used or exercised control over the plaintiff's identity in a manner to which the plaintiff did not consent." *Hoffower*, 736 F. Supp. 3d at 615.

*Ridgeway* was dismissed for lack of Article III standing, which is not challenged here. Moreover, it is an outlier that relied heavily on the reasoning in *TransUnion LLC v. Ramirez,* 594

U.S. 413 (2021), but failed to examine whether the harms associated with the plaintiff's claims were the same type of harm caused by defamation. *See Kellman v. Spokeo, Inc.,* ("*Kellman II*"), 2024 WL 2788418, at *6 (May 29, 2024) ("unpersuaded" by the *Ridgeway* court's reliance on *TransUnion* to find lack of injury and standing because it failed to address the legal differences between plaintiffs' right of publicity claims and the defamation claims in *TransUnion*); *Mannacio*, 2024 WL 4557678, at *3 (same) (collecting cases wherein Courts "within this District have found that the type of harms Plaintiff alleges he suffered as a result of Defendant's conduct are traditionally recognized at common law and found them sufficiently concrete for standing purposes"); *see also Hoffower*, 736 F. Supp. 3d at 612 (holding plaintiff had standing in absence of third-party viewership); *Braundmeier*, 764 F. Supp. 3d at 755 (same).

Clay Labs' other "third-party viewership" authorities, *see* Mem. at 7-8, are also inapplicable. In *Azuz v. Accucom Corp.*, 2025 WL 2807653, at *1 (N.D. Ill. Oct 2, 2025), another standing case, the defendant (like *Hoffower*) relied on "outside data" or "third parties" to obtain the records they were selling; it did not compile any information in a pre-existing database maintained or controlled by the company, making it inapplicable here. In *Fry v. Ancestry.com Operations Inc.*, 2023 WL 2631387, at *6 (N.D. Ind. Mar. 24, 2023), the court denied a motion to dismiss a right of publicity case under the IPC; the *Fry* court's dicta discussion regarding third party viewing ignores that "*something*" did happen—the defendant used plaintiffs' identity to advertise without consent. *Cross v. Facebook, Inc*, 14 Cal. App. 5th 190, 210 (2017), simply stands for the proposition that to be liable under § 3344, the defendant must be the entity who uses plaintiff's image, and not a third party. Plaintiffs here have the right defendant. Finally, *Wilson v. Ancestry.com LLC*, 2024 WL 3992356 (S.D. Ohio Aug. 27, 2024), is yet another summary judgment decision evaluated under Article III standing and an Ohio right of publicity statute,

neither of which are at issue here.

## II. Clay Labs's argument that advertisements following its free trial must be tied to specific individuals fail as a matter of law, as does its separate product argument.

Clay Labs asserts that "recent case law" distinguishes between defendants that "incorporate a plaintiff's identity into a promotion that advertises subscriptions to a people search platform" to advertise a paid product, versus those which maintain a directory with advertisements placed on it, citing *Ambrozewicz v. 6Sense Insights*, 804 F. Supp. 3d. 1026 (N.D. Cal. 2025), and *Vrdolyak v. Avvo, Inc.*, 206 F. Supp. 3d 1384 (N.D. Ill. 2016) (Mem. at 10). According to Clay Labs, its platform is more like a directory with advertisements placed on it, which does not use identities to advertise. (Mem. at 10-13). Clay Labs' attempt to equate its advertising scheme to the innocuous placement of third-party advertisements on a simple directory misses its mark.

Unlike *Vrdolyak*, the instant case is not a directory case, nor are Plaintiffs' claims reliant on third party advertisements. Instead, this case involves the direct use of Plaintiffs' identifying information to entice users to purchase subscription services to the platform via pop-up advertisements after the free trial's fourteen days or 1,000 free credits are exhausted. Stated differently, Clay Labs' platform is designed to search through a database of individual profiles compiled by Clay Labs for the sole purpose of serving these individuals up to sales and marketing professionals. Clay Labs uses free access to those profiles and platform capabilities during the free trial to entice sales and marketing professionals to enter into paying subscriptions. (*See* Compl. ¶¶ 6-7, 44-45, 52-53, 61-62, 70-71, 79-80, 88-89, 98-99, 108-109, 118-119, 128-129). Numerous courts have noted this distinction, rejecting the "directory" argument. *See Lukis I*, 454 F. Supp. 3d at 762 (holding defendants' argument that its background reports are "effectively an online encyclopedia about people misses the point" as it fails to acknowledge the IRPA claim is directed at the free previews, not the background reports); *Kellman v. Spokeo, Inc.* ("*Kellman I*"), 599 F.

Supp. 3d 877, 900 (N.D. Cal. 2022) (rejecting First Amendment challenge and holding that the suit is not about a free directory or an encyclopedia of knowledge but instead the free teasers that are "indisputably ads that are aimed only at inducing a commercial transaction, and not about meaningful communication of knowledge"); *Krause*, 561 F. Supp. 3d at 783-84 (rejecting "directory" argument in constitutional challenge, stating: "plaintiff's IRPA claim does not challenge her inclusion in defendant's "directory," but rather asserts the defendant's use of her identity without her consent to entice customers to purchase its subscription is prohibited by statute" finding such allegations a "textbook example under the IRPA").

As made clear by the Seventh Circuit, to state a right of publicity claim, a person's "identity must help sell something—whether it is that product or a separate product or service," *D'Ambrosio v. Meta Platforms, Inc.*, 176 F.4th 928, 935 (7th Cir. 2026) (quoting *Huston v. Hearst Communications,* 53 F.4t 1097, 1100, 1102 (7th Cir. 2022)). That is precisely what is alleged here. *See* Compl. ¶ 6 ("Clay Labs uses its 14-day free trial to incentivize unsubscribed users to upgrade to a paid subscription"); *id*. ¶ 52 ("Potential customers availing themselves of Clay Labs free trial can view information about Burzawa by using their free account. In other words, Burzawa's identity has been held out by Clay Labs for a commercial purpose, namely, to advertise monthly subscriptions to its platform"); *id.* at ¶ 62 (Davis) (same); *id* at ¶ 70 (Bhaumik) (same); *id* at ¶ 79 (Heinz) (same); *id* at ¶ 88 (Mills) (same); *id.* at ¶ 98 (Philebaum) (same); *id.* at ¶ 108 (Caldwell) (same); *id.* at ¶ 118 (Hurd) (same); ¶ 128 (Waer) (same). To borrow from the factual scenario in *Huston*, it would be as if the buyer of the mailing lists was able to see the names contained therein prior to purchase to help effectuate the Sale. As stated, that is a "textbook" violation of the ROP statutes at issue.

*Ambrozewicz* does not change this outcome for the simple reason that the decision cannot

be squared with the case authority holding that no third-party viewership is required to establish standing or state a claim. (*See supra* at 6-7, 9). *Ambrozewicz* addressed the unauthorized use of personally identifying information in a free trial, followed by pop-ups exhorting the free trial user to upgrade to a paid plan when the free trial credits expired, 804 F. Supp. 3d. at 1029. Although the court recognized that IRPA lacked "an explicit third-party viewership requirement," *id.* at 1032, it then did an about-face and dismissed the complaint based on its finding that the advertisement "has no connection to the underlying persons" who "could be anyone in the database," and therefore "the use 'is nothing like the classic right of publicity case, which most often concerns a celebrity given the value of that person's individual identity.'" *Id.* at 1035. However, as set forth *supra* at 6-7, there is no third-party viewership requirement; what matters is that after the free trial ended an advertisement for a paid subscription appears. Therefore, the pop-up ad (or any other ad) need not be attached to a particular individual profile in the database. The "connection" referenced by the court is the use of plaintiffs' identities to market (without consent) paid subscriptions in a free trial, and therefore those identities are "leveraged" to sell paid subscriptions.

Finally, to the extent Clay Labs argues that a "separate product" must be advertised for an ROP claim, citing *Brooks v. Thomson Reuters Corp.*, 2021 WL 3621837, at *4 (N.D. Cal. 2021), that too fails. (Mem. at 13). ***Nothing*** in the text of IRPA limits the term "commercial purposes" to situations where a person's identity is used to promote a separate product. *Green*, 2024 WL 168123, at *3; *Lukis II*, 542 F. Supp. 3d at 838 (quoting *DeSmet ex rel. Estate of Hays v. Cnty of Rock Island*, 848 N.E.2d 1030, 1039 (Ill. 2006)). The same is true for claims under California Civil Code § 3344. *Carrera v. Whitepages, Inc.*, 2025 WL 1796574, at *10-*11 (W.D. Wash. June 30, 2025) ("[b]cause [section 3344] covers use of a plaintiff's information *in* a product, it does not

have a separate product requirement," and "to the extent that *Brooks* requires a plaintiff bringing a [California Civil Code § 3344] claim to allege that their name or likeness is used to promote a separate product, later decisions in the Northern District of California and elsewhere have rejected such a requirement") (collecting cases)). And even if there were such a requirement, it is satisfied here since Plaintiffs' identities do indeed promote a separate product – monthly subscriptions *See Green*, 2024 WL 168123, at *3. Plaintiffs have not found a decision that directly addressed the existence of a separate product requirement under either the Indiana or Alabama law, but those statutes cover use of a plaintiff's information "in a product" similar to Cal. Civ. Code § 3344. *See* IC 32-36-1-2; AL ST § 6-5-772.

**III. Clay Labs' First Amendment argument is a retread of its failed directory argument.**

Clay Labs' arguments grounded in the First Amendment similarly fail. (Mem. at 13-15). As an initial matter, the Court need not reach these arguments at this stage of the litigation since they "more appropriately represent[ ] an affirmative defense." *Siegel*, 2021 WL 4306148, at * 4; *Hoffower*, 2022 WL 17128949, at *2. Should the Court decide to consider Clay Labs' First Amendment challenge, Plaintiffs' ROP claims easily survive.

The speech at issue here is commercial speech, which is speech that does "no more than propose a commercial transaction." *Bolger v. Young Drug Prod. Corp.*, 463 U.S. 60, 65 (1983). The Seventh Circuit has provided additional considerations, which include "whether: (1) the speech is an advertisement; (2) the speech refers to a specific product; and (3) the speaker has an economic motivation for the speech." *Jordan v. Jewel Food Stores, Inc.*, 743 F.3d 509, 517 (7th Cir. 2014). The allegations in the Complaint demonstrate that each of these considerations are satisfied. Clay Labs' argument, premised on its mistaken insistence that its subscription-based platform is a directory, is done in by the allegations/facts that the free trial does propose a

commercial transaction (a paid subscription), it is an advertisement, it does reference a specific product (access to the Clay Labs platform website), and Clay Labs has an economic motive (profit). (*See* Mem. at 13).

Courts have repeatedly rejected First Amendment challenges in ROP cases generally, and "directory" arguments specifically. *See Kellman I*, 599 F. Supp. 3d at 900, and *Krause*, 561 F. Supp. 3d at 783-84, *supra* at 10-11; *Lukis II,* 542 F. Supp. 3d at 843-44 ("The free previews, if anything, present a more difficult First Amendment case for Defendants than do the background reports because they 'propose a commercial transaction' and thus fall 'within the core notion of commercial speech'"); *Mackey*, 2023 WL 2561621, at *11-13 (rejecting First Amendment challenge as "baseless" in an IRPA case where users were prompted to register for account and purchase a subscription after free search); *Gaul v. Truth Now, LLC*, 2022 WL 3647257, at *8-9 (C.D. Ill. Aug. 24, 2022) (rejecting First Amendment challenge in free preview IRPA case, including "directory" argument); *Boshears v. PeopleConnect, Inc.*, 2022 WL 888300, at *11 (W.D. Wash. Mar. 25, 2022), *vacated on other grounds*, *appeal dismissed*, 2023 WL 4946630 (9th Cir. Aug. 3, 2023) (upholding Indiana's right of publicity statute on a First Amendment challenge); *Camacho*, 2022 WL 3093306, at *19-21 (rejecting First Amendment challenge to § 3344 and ARPA).

Clay Labs "directory" case authorities are inapplicable. In *Vrdolyak*, the district court held that a free directory containing profiles of U.S. attorneys was not commercial speech by virtue of third-party advertisements displayed alongside the profiles. 206 F. Supp. 3d at 1388. Despite the presence of third-party advertisements, the profiles were displayed *for free*, not every page had an advertisement, and the advertisements did not name the attorneys shown in the profile pages where they were displayed. *Id.* at 1386-88. In *Dex Media W., Inc. v. City of Seattle*, 696 F.3d 952, 959

(9th Cir. 2012), the Seattle city government sought to forbid the publication of the directory itself (a phonebook). The Ninth Circuit held that the presence of advertisements for unrelated local businesses did not render the phonebooks "commercial speech" because there was "no clear link" between the noncommercial phone listings in the directory and the businesses being advertised. *Id*. And in *IMDb.com Inc. v. Becerra*, 962 F.3d 1111, 1122 (9th Cir. 2020), the Ninth Circuit held that "free, publicly available profiles" of the cast and crew of movies on the website IMBD.com were not commercial speech because they were "encyclopedic," not "transactional."

Clay Labs' "directory" authorities have been repeatedly distinguished. *See, e.g., Kellman*, 599 F. Supp. 3d at 900 (distinguishing *Dex Media* and *Becerra*—the issue "is not the free directory or an encyclopedia of knowledge," but instead the teaser ads, which are "unquestionably aimed only at inducing a commercial transaction"); *Krause,* 561 F. Supp. 3d at 784 (distinguishing *Vrdolyak*); *Gabiola v. Sarid*, 2017 WL 4264000, at *6 (N.D. Ill. Sept. 26, 2017) (same).

Finally, courts apply intermediate scrutiny in commercial speech cases. *Ezell v. City of Chicago*, 651 F.3d 684, 708 (7th Cir. 2011) (citing *Fox*, 492 U.S. at 477). Clay Labs does not address intermediate scrutiny argument, *see* Mem. 13-15, and even if it did, Plaintiffs' ROP claims would easily survive such scrutiny. *See above.*

## **Conclusion**

For the reasons stated herein, Clay Labs Rule 12(b)(6) motion to dismiss should be denied.

Respectfully Submitted,

Anna Burzawa, Joann Davis, Sruti Bhaumik, Brian Heinz, Maxx Mills, Amara Philebaum, Tyree Caldwell, James Hurd, and Rex Waer, individually and as the representatives of classes of similarly-situated persons,

By: *<u>/s/ Wallace C. Solberg</u>*

One of Plaintiffs' attorneys

Wallace C. Solberg
Patrick J. Solberg
ANDERSON + WANCA
3701 Algonquin Road
Suite 500
Rolling Meadows, IL 60008
wsolberg@andersonwanca.com
psolberg@andersonwanca.com

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on October 2, 2026, a true and correct copy of the foregoing Notice of Voluntary Dismissal was e-filed and served on all counsel of record using the Court's CM/ECF system.

/s/ *Wallace C. Solberg*